UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| NANCY WISEMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CV-357 JD |
| | ) | |
| CITY OF MICHIGAN CITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

On January 22, 2013, Plaintiff Nancy Wiseman, through counsel, filed her First Amended Complaint, asserting eight counts variously against the City of Michigan City, Indiana, the City of Michigan City Department of Cemeteries, Perry Peterson, in his individual and official capacities, and Mark Tomsheck, in his individual and official capacities, as follows: (1) assault and battery against Mr. Peterson; (2) false imprisonment against Mr. Peterson; (3) section 1983 for violation of the First Amendment against all defendants; (4) section 1983 for violation of the Equal Protection Clause against all defendants; (5) infliction of emotional distress against all defendants; (6) punitive damages against Mr. Peterson and Superintendent Tomsheck; (7) sex discrimination and retaliation in violation of Title VII against the City of Michigan City and its Department of Cemeteries; and (8) disability discrimination and retaliation in violation of the Americans with Disabilities Act against the City of Michigan City and its Department of Cemeteries.

Now before the Court is the Motion to Dismiss filed by defendants the City of Michigan City, the Department of Cemeteries, and Superintendent Tomsheck [DE 33]. The motion seeks dismissal of Counts 3 and 4 in their entirety, and Counts 5, 7, and 8 as to the Department of

Cemeteries only. The motion does not contest the Title VII and ADA claims against the City of Michigan City, and makes no mention of the infliction of emotional distress and punitive damages claims. On February 22, 2013, Ms. Wiseman filed a response in opposition [DE 37], to which the Defendants filed a reply on March 1, 2013 [DE 38]. For the following reasons, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is hereby GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND[1]

Plaintiff Nancy Wiseman, a female, began working for the City of Michigan City Department of Cemeteries in April 2010 as a seasonal laborer at Greenwood Cemetery. [DE 32 ¶¶ 6–8]. As a seasonal employee, Ms. Wiseman worked from April to November in 2010, and returned for the same period in 2011. [DE 32 ¶¶ 7, 13, 33]. Ms. Wiseman's supervisor was Perry Peterson, a male, and she also worked alongside two other seasonal laborers, both of whom were male. [DE 32 ¶¶ 9–10]. Ms. Wiseman alleged that in 2010, Mr. Peterson began making unwanted and unwelcome sexual comments to Ms. Wiseman, and that this escalated severely when she returned to her position in 2011. [DE 32 ¶¶ 12–20]. During 2011 in particular, Mr. Peterson made grossly inappropriate and offensive statements and gestures on multiple occasions. [DE 32 ¶¶ 14–20]. In the most severe incident, Mr. Peterson forced Ms. Wiseman to the floor, restrained her against her will, and then, while on top of her, described the sex acts he wanted to perform on her. [DE 32 ¶ 15]. Throughout 2011, Mr. Peterson continuously told Ms. Wiseman that he was not being satisfied sexually, and in July or August 2011, Mr. Peterson suggested to her that since she refused to satisfy him, "he would approach females walking in the cemetery for sex." [DE 32 ¶¶ 18–19].

---

[1] Because not all of Ms. Wiseman's claims are subject to Defendants' motion to dismiss, only those allegations relevant to the claims at issue are set forth here.

Ms. Wiseman complained about this conduct in around July 2011 to Mark Tomsheck, Superintendent of the City of Michigan City Department of Cemeteries. [DE 32 ¶¶ 11, 23]. Following this complaint, Shelley Dunleavy, from the City of Michigan City's Personnel Department, asked Ms. Wiseman to provide a statement describing Mr. Peterson's conduct towards Ms. Wiseman. [DE 32 ¶ 28]. In response, Ms. Wiseman submitted a "written complaint and concerns of sex harassment and sexual assault and battery" by Mr. Peterson. [DE 32 ¶ 30]. In addition, Ms. Wiseman submitted a "written complaint and concerns about Peterson suggesting that he could or would sexually harass and/or assault female citizens visiting the Greenwood Cemetery." [DE 32 ¶ 30]. Mr. Peterson's employment was terminated shortly thereafter. [DE 32 ¶ 31].

That November, Ms. Wiseman's seasonal employment ceased due to the end of the grounds maintenance season. [DE 32 ¶ 33]. When the next maintenance season came around in April 2012, Ms. Wiseman reapplied for her position with the Department of Cemeteries, but she was not hired. [DE 32 ¶ 35]. However, the two males with whom she had previously worked were both rehired, and another young male with less experience than Ms. Wiseman was also hired in April 2012. [DE 32 ¶¶ 36–37]. In addition, two other males were also hired and began working as seasonal laborers later in April 2012, and two more were hired in August or September 2012, while Ms. Wiseman was not hired for any of these positions. [DE 32 ¶¶ 41–42, exhibits B, C].

Ms. Wiseman subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission [DE 32, exhibit A], and initiated the present action by filing a six-count complaint on June 27, 2012 [DE 1]. Upon receiving her Dismissal and Notice of Rights from the EEOC [DE 32, exhibit D], Ms. Wiseman amended her complaint to add claims under

Title VII and the Americans with Disabilities Act. [DE 32]. Mr. Peterson answered the complaint [DE 36], while the remaining defendants filed a motion to dismiss, which is presently at issue [DE 33].

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Generally speaking, when considering a Rule 12(b)(6) motion to dismiss, courts must inquire whether the complaint satisfies the "notice-pleading" standard. *Indep. Tr. Corp. v. Stewart Info. Services Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide "fair notice" of the claim and its basis. *Id.* (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citations omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In determining the sufficiency of a claim, the court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citation omitted).

In recent years, the Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id*. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, if there are

well-pleaded factual allegations, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chi.*, 671 F.3d. 611, 615 (7th Cir. 2011) (citing *Iqbal* and *Twombly*). The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (citations omitted). However, a plaintiff's claim need only be plausible, not probable. *Indep. Tr. Corp.*, 665 F.3d at 935 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In order to satisfy the plausibility standard, a plaintiff's complaint must "supply enough fact to raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *see Iqbal*, 556 U.S. at 679 (citation omitted), and the Court will assess Plaintiffs' claims accordingly.

## III. DISCUSSION

### A. The Department of Cemeteries Is Not a Suable Entity

As to each claim Ms. Wiseman has brought against the City of Michigan City, she has brought that claim against its Department of Cemeteries as well. The defendants argue that these claims must be dismissed as to the Department of Cemeteries because it is not a suable entity and has no separate legal existence from the City of Michigan City. In support of her claims against the Department of Cemeteries, Ms. Wiseman cites a statute governing municipal control of

5

cemeteries that states, "A suit may be brought against the cemetery board in its own name." Ind. Code § 23-14-65-21(c). This is part of a legislative framework that allows municipal legislative bodies to delegate their control over municipal cemeteries to a board of trustees. Ind. Code § 23-14-65-1 *et seq.* The parties dispute, though, whether this provision is limited to eminent domain matters or whether it would also apply here, in an employment context.

However, it is unnecessary to resolve that question at this time since Ms. Wiseman has not actually sued the board of trustees in its own name; she has only sued the Department of Cemeteries, which is simply an executive department of the City of Michigan City. Michigan City Code section 30-51 establishes a "board of trustees, to be known as the board of cemetery trustees." The creation of the board of trustees is specifically authorized under section 23-14-65-10 of the Indiana Code. The City of Michigan City has also separately created a "cemetery department" pursuant to its authority under section 36-4-9-4 of the Indiana Code to establish executive departments that it considers necessary to efficiently perform the administrative functions of the city. Michigan City Code § 30-31. Though the board of cemetery trustees has the authority to regulate the cemetery department per Michigan City Code section 30-31, they are in fact separate entities that were established by separate municipal codes as authorized by separate statutory provisions.

Thus, regardless of whether the Board of Cemetery Trustees may be sued in its own name in this matter, Ms. Wiseman has not done so; she has sued the department but not the board. The appropriate inquiry is therefore limited to whether the Department of Cemeteries is itself a suable entity. However, Ms. Wiseman points to no authority suggesting that the Department of Cemeteries itself may sue or be sued, and she even concedes in her complaint that it is merely a department of the City of Michigan City [DE 32 ¶ 4]. Therefore, pursuant to a long line of cases

holding that municipal departments are not distinct from their municipalities and are not suable entities, Ms. Wiseman's claims against the Department of Cemeteries must be dismissed. *E.g.*, *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011); *West v. Waymire*, 114 F.3d 646, 646–47 (7th Cir. 1997) ("The naming of the Town's Police Department as a defendant adds nothing; it is almost certainly not a suable entity separate from the Town."); *McAllister v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 822 n.2 (N.D. Ind. 2010); *Argandona v. Lake County Sheriff's Dep't*, No. 2:06-cv-259, 2007 WL 518799, at *3 (N.D. Ind. Feb. 13, 2007) ("[A] unit of local government may not lie within reach of § 1983 because the entity has an agency relationship with the municipality and is not separate from the municipality."). Defendants' motion is therefore granted as to the Department of Cemeteries, which is dismissed with prejudice from this action.

## B. Section 1983 Claims

The defendants also seek dismissal of Counts III and IV, which assert liability under section 1983 for alleged violations of Ms. Wiseman's rights under the First and Fourteenth Amendments, respectively. Section 1983 provides a cause of action against any "person" acting "under color of" law who deprives an individual of any federally-protected rights. 42 U.S.C. § 1983. To establish a claim under this section, therefore, a plaintiff must establish that the defendant was a person acting under color of law, and that their rights were violated. For the following reasons, Ms. Wiseman has sufficiently plead her claims against the City of Michigan City and Superintendent Tomsheck, in his individual capacity. However, Defendants' motion to dismiss is granted as to Superintendent Tomsheck and Mr. Peterson in their official capacities.

### 1. Persons Acting Under Color of Law

Initially, Ms. Wiseman concedes that since the City of Michigan City is itself participating in this action, her claims against Superintendent Tomsheck and Mr. Peterson in their official capacities are duplicative and may be dismissed [DE 37, p. 8]. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Counts III and IV are therefore dismissed against Superintendent Tomsheck and Mr. Peterson in their official capacities, as agreed by the parties. The defendants offer no argument as to Superintendent Tomsheck in his individual capacity, however, so these claims may proceed against Superintendent Tomsheck in his individual capacity to the extent that Ms. Wiseman sufficiently pleads deprivations of her constitutional rights by Superintendent Tomsheck. *See id.* at 166.

As to the City of Michigan City, the defendants argue that these claims must be dismissed because Ms. Wiseman has not alleged a sufficient basis for municipal liability. Under *Monell v. New York City Dep't of Soc. Servs.*, a municipality is not vicariously liable for the constitutional violations of its agents. 436 U.S. 658, 694 (1978). However, municipalities may be held liable under section 1983 where constitutional deprivations are caused by: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law, or (3) a person with final policymaking authority. *Id.*; *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Ms. Wiseman argues only under the third prong, alleging that Superintendent Tomsheck, as the Superintendent of the Department of Cemeteries of the City of Michigan City, is a person with final policymaking authority.

"The determination of whether a person has policymaking authority is a question of state law . . . ." *Valentino v. Village of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). In addition, the proper inquiry "is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker 'in a particular area, or on a particular issue.'" *Id.* (quoting *Kujawski v. Bd. Of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999)). There is a distinction, however, between *policymakers* and *decisionmakers*, and the fact that a particular official made the decision at issue does not necessarily make them a policymaker as to that decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Therefore, to determine whether a decisionmaker also has final policymaking authority as to a particular issue, courts look to (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision is within the official's grant of authority, in addition to considering applicable positive law and customs and practices having the force of law. *Valentino*, 575 F.3d at 676.

Initially, Ms. Wiseman has adequately pled that Superintendent Tomsheck was a decisionmaker for the alleged violations. The Amended Complaint states that Superintendent Tomsheck "had supervisory authority" over Ms. Wiseman [DE 32, ¶ 11], that he made personnel decisions [DE 32, exhibit C], that Ms. Wiseman was not re-hired [DE 32, ¶ 35], and that he "caused and/or participated in Wiseman's constitutional deprivation," [DE 32, ¶¶ 61, 83]. The question, then, is whether he took these alleged actions in the capacity of a final policymaker for the City of Michigan City. As to this issue, "the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and

fire." *Kujawski*, 183 F.3d at 739. Because Ms. Wiseman has stated a plausible claim that Superintendent Tomsheck "had at least *de facto* authority to set policy for hiring and firing," her complaint is sufficient as to this question. *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013).

First, the City of Michigan City formally granted the board of cemetery trustees, which regulates the Department of Cemeteries, with the authority to make all necessary rules and regulations for the management of its cemeteries. Michigan City Code § 30-55. However, though this authority lies in the board rather in Superintendent Tomsheck, the municipality can still be liable if that authority has been delegated to Superintendent Tomsheck, either expressly or in practice. *Gschwind v. Heiden*, 692 F.3d 844, 848 (7th Cir. 2012) (finding municipal liability where a board of education's policy was to give unreviewed discretion to the principals who made the employment decisions); *Kujawski*, 183 F.3d at 739 (finding municipal liability where the policymaking authority had been delegated "as a matter of custom").

As in *Kristofek*, where the Seventh Circuit held that a complaint sufficiently asserted a basis for municipal liability where it "suggest[ed]" that the official "was fully in charge of the police department and that his firing decisions were not reviewed," 712 F.3d at 987, the facts alleged here at least plausibly suggest that Superintendent Tomsheck had full authority over hiring and firing within the Department of Cemeteries and that his decisions were not reviewed. Although the complaint is sparse on this question, two exhibits to the complaint reference Superintendent Tomsheck's authority over personnel matters. The meeting minutes of the Board of Cemetery Trustees for April 12, 2012, and September 13, 2012, each reference personnel matters under the heading of "Superintendent Report." [DE 32, exhibits B and C]. Whereas other sections of the minutes indicate the board voting on or officially approving or denying actions,

10

there is no indication that it took any action or maintained any oversight as to the items reported by the superintendent (save for suggesting that he send a thank-you letter in one instance). In fact, the September 13, 2012 minutes state: "Superintendent Tomsheck hired to [sic] new full time employees. A seasonal employee has returned to work." [DE 32, exhibit C]. There is no indication that the board exercised any degree of oversight over this action or that this action was constrained by policy set by the board. It is at least plausible, then, that Superintendent Tomsheck had at least *de facto* policymaking authority over the decision at issue here. While discovery will likely shed further light on this question and may ultimately lead to an opposite conclusion, the complaint adequately states a claim for municipal liability against the City of Michigan City under section 1983.

### 2. Constitutional Violations

The most crucial element of a claim under 1983, however, is a deprivation of federally-protected rights. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997) ("Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere."). Here, Ms. Wiseman asserts that her rights under the First Amendment (Count III) and the Equal Protection Clause of the Fourteenth Amendment (Count IV) were violated.

#### a. First Amendment

The threshold inquiry to establishing a claim under section 1983 for retaliation in violation of the First Amendment is "whether the plaintiff's speech was constitutionally protected." *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). For speech to be protected, it must address "a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). However, as the Seventh Circuit has noted, merely speaking on a topic of public concern does

not necessarily meet this burden. *Kokkinis*, 185 F.3d at 843. Instead, "speech lacks the public concern element if it 'concerns a subject of public interest but the expression addresses only the personal effect upon the employee.'" *Button v. Kibby-Brown*, 146 F.3d 526, 529–30 (7th Cir. 1998) (quoting *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994)). Courts therefore look to whether the speaker is speaking "more like a citizen or a disgruntled employee whose statements are primarily of personal interest," *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 585 (7th Cir. 1992), based on the "content, form, and context of a given statement," *Connick*, 461 U.S. at 147.

Ms. Wiseman argues that she satisfied the public concern element due to the topic of her speech—sexual harassment—and the fact that she suggested that Mr. Peterson may sexually harass or assault women visiting the cemetery. Initially, Ms. Wiseman's reports of Mr. Peterson's sexual harassment *as directed at her* are not protected speech on their own; despite the importance of the topic, the reports were intended to advance her interests as an employee in remedying her work environment. *Phelan v. Cook County*, 463 F.3d 773, 791 (7th Cir. 2006); *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 626 (7th Cir. 2004) ("Sexual harassment is indeed an important matter, but not all speech relating to sexual harassment enjoys constitutional protection.").

However, the concerns Ms. Wiseman raised that Mr. Peterson might harass or assault female visitors to the cemetery warrant closer scrutiny since they extend beyond purely internal matters. In *Phelan*, in which the Seventh Circuit held that the speech at issue was not protected, the court based its holding in part on the fact that the plaintiff had not complained about the treatment of other women. 463 F.3d at 791. Ms. Wiseman, however, has expressly alleged that she made such a complaint, namely that Mr. Peterson "could or would sexually harass and/or

assault female citizens visiting the Greenwood Cemetery." [DE 32 ¶ 30]. Likewise, the Seventh Circuit held in *Wallscetti v. Fox* that speech was not protected where it addressed only the conduct towards the employee personally, "rather than more generally about her supervisors' effect on the morale of the office as a whole or some other issue of broader importance." 258 F.3d 662, 667 (7th Cir. 2001). Here, the concern that Ms. Wiseman expressed regarding Mr. Peterson potentially sexually harassing and assaulting females at the cemetery is certainly as substantial as morale in the office. Though the work environment of cemetery employees may be of some tangential concern to the public that visits the cemetery, a potential threat to the visiting public's safety and wellbeing is of much broader and pressing concern.

Other factors, such as that Ms. Wiseman made the complaint only internally and seemingly in support of her complaints regarding Mr. Peterson's conduct against herself, point towards a personal interest. *Wales v. Bd. of Educ. of Cmty. Unit Sch. Dist. 300*, 120 F.3d 82, 84 (7th Cir. 1997) ("Although the First Amendment is not limited to speech that is broadcast to the world, an employee's decision to deliver the message in private supports an inference that the real concern is the employment relation . . . ."); *Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir 2001) (holding that speech was not protected where it came in the course of a long-running dispute with the employee's supervisor). However, the facts pled in the complaint indicate that Ms. Wiseman's speech did not "only" address the personal effect upon her, *Phelan*, 463 F.3d at 791, so she has adequately plead her First Amendment retaliation claim against Superintendent Tomsheck in his individual capacity and against the City of Michigan City.

### b. Equal Protection

Ms. Wiseman also brings a claim under section 1983 for violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. Defendants argue for the dismissal of

13

this claim on the basis that Ms. Wiseman has not plead any direct evidence of intentional discrimination. This argument is mistaken, however. As the Seventh Circuit has noted on many occasions in similar contexts, a plaintiff may proceed past the pleading stage on a discrimination claim by simply identifying the employment action and the alleged reason for that action. *E.g.*, *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 610–11 (7th Cir. 2013) ("Petrovic's allegations that Enterprise refused to rent him a car because he is white, and did rent cars to a comparable black man and a Hispanic woman, suffice to state a plausible claim of race discrimination."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else."); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (noting that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex"); *Bennett v. Schmit*, 153 F.3d 516, 518 (7th Cir. 1998) (stating that "'I was turned down for a job because of my race' is all a complaint has to say'" in order to satisfy the pleading standard for a discrimination claim); *see also* Fed. R. Civ. P. 9(b) (stating that intent and state of mind may be alleged generally).

Ms. Wiseman has met that standard here. She has identified the specific adverse action—that she was not rehired as a seasonal employee at the Greenwood Cemetery in April 2012—and has alleged that the basis for that action was discrimination on account of her sex. [DE 32, ¶¶ 69–77]. She also pled that similarly situated males were hired for the position she had applied for. [DE ¶¶ 36, 37, 40]. Ms. Wiseman has therefore adequately pled her claim under 1983 against

Superintendent Tomsheck in his individual capacity and the City of Michigan City for violation of her rights under the Equal Protection Clause of the Fourteenth Amendment.

## IV.  CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [DE 33].  Defendants' request to dismiss the Department of Cemeteries from all counts is GRANTED and Counts III, IV, V, VII, and VIII are DISMISSED WITH PREJUDICE as to the Department of Cemeteries. Defendants' request to dismiss Counts III and IV as to Superintendent Tomsheck and Mr. Peterson in their official capacities is also GRANTED, and Counts III and IV are DISMISSED WITH PREJUDICE as to those defendants. However, Defendants' request to dismiss Counts III and IV as to the City of Michigan City and Superintendent Tomsheck in his individual capacity is DENIED. Those counts may also proceed against Mr. Peterson in his individual capacity, as he is dismissed from this action in his official capacity only.

SO ORDERED.

ENTERED:   August 19, 2013

                                                        /s/ JON E. DEGUILIO
                                           Judge
                                           United States District Court